**JUNIKL, Plaintiff-Appellee v. MIAMI SAVINGS & LOAN CO., Defendant-Appellee.**

Ohio Appeals, Second District, Montgomery County.

No. 1761.  Decided May 29, 1943.

Froug & Froug, Dayton, for plaintiff-appellee.
Hon. Mason Douglass, Dayton, for defendant-appellant.

## OPINION

By HORNBECK, J.

By reason of the type of appeal, on questions of law and fact, it becomes our obligation to determine this cause as upon original presentation.  The question presented is an issue of fact. namely, whether or not the plaintiff during the period that he had funds placed with the defendant company was a stockholder or a special depositor.  This case is but

one, of a number of cases, which we have considered involving the same question and in some particulars, is more definite and more satisfactory in proof than many which we have heretofore determined.

The effect of plaintiff's testimony is to establish that, unmistakeably, at all times, he placed his funds with the defendant company as a special depositor; that neither he nor the Loan Company should have had any doubt about his status.

There is no refutation of his statement except that which may be inferred from the records of the defendant institution. But it appears that, although there was a stock subscription bearing his name, it was not his signature personally affixed nor authorized to be made. The record discloses that his account covered a considerable period of time and had been reduced until it was of modest proportions, when he again made deposits in large sums of money, namely, $1,075 on April 16, 1931, and $5,000 on April 28, 1931. He states that not once but several times, he made it plain to employees of the Loan Company with whom he trasacted his business that he desired these funds entered as a special deposit which would be available to him for withdrawal at any time he desired, and that he explained to these employees that he contemplated a trip to California and might need the funds. He identifies and names the two men with whom he had conversation. In this particular this case differs from many that we have had.

Neither one of these men is produced to deny the statements made by the plaintiff connecting them with the transactions, nor is there any explanation of their failure to testify. It could be easily understood that these men, if available, may have forgotten the testimony but they could have at least been called and have made the statement that they had no recollection of such conversations, if this comported with the fact. If not available as witnesses the record could so show.

In addition to the general account of the Loan Company there appear several receipts representative of money withdrawn by the plaintiff from his account. Each of these, in all eight in number, is signed by the plaintiff. Seven of them have written thereon in handwriting, other than that of the plaintiff, the initials R. S. testified to represent "Running Stock". Three such receipts have the following printed thereon,

"the above amount has been charged to my running stock account No._____."

These receipts must, of course, be given consideration for what they import. However, there are two viewpoints upon which they may be reconciled with the testimony of the plaintiff, first, if the Loan Company was under specific instructions, or there was a definite arrangement between it and plaintiff, its depositor, that his

account should be a special deposit account, then the company may not be heard to say that it was any other type of account. Estoppel would not operate against the plaintiff unless it appeared that knowing his status he acquiesced therein. Secondly, in the light of business practice, as it is commonly understood, and under the circumstances here appearing, it is probable that the plaintiff would not know that R. S. or "Running Stock" appeared on the receipts which he signed. Nor, can we say that he is chargeable with knowledge that these symbols, or words, were on these receipts. They were signed as a matter of course when the plaintiff withdrew funds from his account. They were at no time in his possession. Blank spaces were filled by a representative of the company, and it may be that the plaintiff considered them only as receipts for the amounts of money which he was withdrawing.

The plaintiff states that, prior to the time when he was given the Savings Account Book, plaintiff's Exhibit No. 1, he had a book marked "Special Deposit" which he turned in at the request of an officer of the company, whereupon he was issued the book, plaintiff's Exhibit No. 1. He describes this Special Deposit Book, even to its color. There is no testimony to refute his statement. We have many times had these books, such as Exhibit No. 1, before us. They could readily have been commonly used either for running stock funds or special deposits and, as we understand it, were so used.

There is but one notation on this book which identifies a credit, namely, the entry of Jan. 5, 1931, where midway between the columns headed, Withdrawal and Deposit appears, in small type, the abbreviation, Div. Dec. and, of this date, there is credited the sum of $6.08, under the heading, Interest or Dividend. This is the only symbol in this book, or connected in any way with any figure therein, which, in the slightest degree, identifies the accretions to the account in the way of interest or dividends. Finally, it appears that, on the 12th of June, 1931, the plaintiff was permitted to withdraw from this account the sum of $1500. This withdrawal upon this record could have been made on no other hypothesis, than that the plaintiff was a special depositor as to the larger sums put into the Loan Company, of date April 16 and April 28, 1931. These amounts were entered upon and carried into plaintiff's savings account book, and were a part of the whole account, which is the subject of the controversy.

As we understand it, the association does not contend that it is in a position to deny that the larger sums, more lately deposited to the plaintiff's account, were special deposits. It is difficult to understand how any other position could be taken in view of the undisputed factual situation. Mr. Hommel, manager of the defendant association, testifying in its behalf made this significant statement on direct examination by Judge Douglass.

"Q. Did they use it (the green book headed Savings Account) for deposits in stock?

A. Our records show nothing was put in book accounts as deposits, it was taken as stock."

Obviously, this is what happened as to the larger deposits made by the plaintiff in this case.

Upon the whole record we find that the plaintiff has established his claim in all particulars as asserted and that he is entitled to the relief prayed. It will be so ordered.

BARNES, P. J., and GEIGER, J., concur.