## BLESI, Plaintiff-Appellant v. MIAMI SAVINGS & LOAN CO. Defendant-Appellee.

Ohio Appeals, Second District, Montgomery County.

No. 1802. Decided April 19, 1944.

185

Marshall, Harlan & Marshall, Dayton, for plaintiff-appellant.

Mason Douglass, Dayton, for defendant-appellee.

## OPINION

By HORNBECK, J.

The appeal is on questions of law. One error is assigned, namely: the judgment for the defendant predicated upon the finding that the plaintiff's deceased mother was a running stockholder and not a depositor of the defendant company.

Plaintiff's cause of action, as set out in her petition, is based upon the claim that on or about January 20, 1921, Ethel L. Blesi, mother of the plaintiff, opened an account with the defendant; that Ethel L. Blesi died on or about the 12th day of July, 1939, leaving plaintiff as her only child, and Fred J. Blesi, her widower, was named administrator of her estate; that decedent died possessed of said running stock account, and that thereafter the administrator of the estate of Ethel L. Blesi assigned said account to the plaintiff, who is the sole owner thereof. It is asserted that the account of plaintiff's mother was designated by the defendant as Running Stock Account No. 14,657; that at the request of the agent of the defendant, plaintiff's mother signed a card designated as a signature card and over the signature was printed "a subscription to —— number of shares of stock". Said Ethel L. Blesi made deposits on said running stock account; made withdrawals therefrom at various times up to July 3, 1930, when her running stock account was stamped "paid" and a new account book issued to

the said Ethel L. Blesi marked "Savings Account No. 144", in which book there was a specific column for deposits, and a column designated "interest or dividends" and in which the said Ethel L. Blesi was instructed to make out her "own deposit tickets" and told that her "pass book" should be left for audit at regular intervals.

Plaintiff further says that from July 3, 1930, until September 21, 1931, the date of the last deposit by the said Ethel L. Blesi on the savings account aforesaid, there was no withdrawal, either of interest or principal, on said account, and the final balance thereon as of September 21, 1931, was $1,074.41.

Plaintiff prays that she may be designated as a Savings Depositor in the defendant company, and that this claim in the amount of $1,074.41 be prorated on liquidation with other savings depositors, etc.

Defendant's answer is a general denial that the account held by the plaintiff is a special deposit account, and further alleges that it was a running stock account.

As a second defense, it is plead that the claim is barred by the statute of limitations, because the stock account was instituted as of date January 29, 1921, and a third defense is set up.

The plaintiff files no reply to the answer. The filing of such reply would be consistent with the claim of the appellant in this court as to the burden of proof.

When the cause came on for trial, the plaintiff was briefly interrogated, established that she was the owner of the account by assignment, as set up in her petition; offered her mother's Savings Account Book No. 144 and testified that that was the only book that had come into her possession. The Assistant Secretary and General Manager of the defendant company testified, and through him was introduced the ledger sheet of Account No. 14,657 in the name of Mrs. Ethel L. Blesi, indicated in print as "Running Stock" and on the reverse side thereof in type: "I hereby subscribe for ——— shares of the Capital Stock of the Miami Loan and Building Association of Dayton, Ohio, and agree to be bound by the constitution, by-laws, rules and regulations of said Association". The number of shares is not indicated, there is no date on the reverse side of the ledger sheet and it is not signed by Ethel L. Blesi in the place designated for the subscriber on the form, but at the bottom thereof, under the heading "Remarks" appears the name and the signature of Mrs. Ethel L. Blesi. This exhibit was marked "B" and introduced.

The plaintiff also introduced two withdrawal receipts signed by Ethel L. Blesi, the first dated December 21, 1926, and the last dated March 12, 1930. The first receipt has the date and the amount thereof placed at the top thereof, reciting "Received from the Miami Savings & Loan Company of Dayton, Ohio, the above amount which has been charged to my running stock account No. 14657"; that part of the receipt wherein is used the language "Running Stock Account No. 14657" is in heavy black face type. The other receipts do not carry the language "Running Stock Account", but merely "my account No. 14657", but on all the receipts but the first, in a rectangular space in the lower left hand corner is inserted and written in, in ink, the capital letters "RS". These receipts are introduced as Exhibit "C". Exhibit "D" is the blank form of subscription card in the name of Mrs. Ethel L. Blesi No. 144, and also carrying the number 14657, the number of the new account and old account respectively. This subscription card is for shares of stock and is not signed. Exhibit "F" is the ledger sheet of the new account No. 144, also carrying the old number 14657, on which appears the entries of deposits and withdrawals from May 27, 1930, to September 21, 1931, inclusive, and Exhibit "E" carries the old number of account 14657, and added therein, in red ink, the number of the new account No. 144, which is the ledger sheet of this account, showing withdrawals, deposits, balances and the method of accretions thereto, whether dividends or interest.

The deposit book, plaintiff's Exhibit "A", has the headings: "Date, Withdrawals, Deposit, Balance, Interest or Dividend", and another column under which appear the symbols: "DC", "SR D", "SR A" and "SR D", and under the heading "Interest or Dividend" appear two entries, one of $27.22 and the other $27.60. An examination of the ledger sheets shows the first ledger sheet beginning January 20, 1921, the date of the opening of the account, and ending January 30, 1924, reciting the number of shares of Running Stock as "5". The deposits are set out in amounts under the appropriate column, but there is no entry thereon to indicate accretions to this account, whether by interest or dividends. On plaintiff's Exhibit "E", in addition to the deposits as such, there appear accretions to said account in ten instances wherein it is plainly designated that they are either "Dv" for dividends or "In" for interest. Seven of these are noted as dividends and three as interest.

On the ledger sheet for the new account No. 144, deposits are carried under a separate heading and the other accretions thereto are carried under headings "Dividends" and are two in number.

We have set forth substantially all that the record in this case discloses.

It is the claim of the plaintiff upon her petition, that she was entitled to an order in the trial court classifying the account which she held as a "Deposit Account". It is further claimed by the plaintiff that, inasmuch as the defendant asserts in its answer that the account in question was a "Running Stock Account", the burden of establishing this defense is upon the defendant.

Upon the record, as it appears to us, the question of the burden of proof is not vital to a determination of the issues. However, it is our judgment that the burden is upon the plaintiff in the first instance to maintain her claim as asserted in her petition, namely: the status of a deposit account holder in the defendant company. Unless and until she makes this proof, she has not supported the theory upon which she predicates her cause of action.

Be that as it may, all the record that is before us is that which we have heretofore set forth. Upon this evidence the trial judge determined that the plaintiff had not sustained her cause of action, and further that the evidence supported the finding that the claim which she held was a Running Stock Account.

The question for our determination is whether or not the trial judge in so holding, manifestly disregarded the weight of the evidence. We cannot so find. This case, unlike most cases of this general classification that have come to our attention, differs from them in that, here there is no direct or express testimony to the effect that plaintiff's predecessor in title claimed any other status than that which appears by the record before us. She had but one of two classifications— either a depositor or a stockholder.

The inference, if any, to be drawn from the records of the defendant company is that the account book which the plaintiff's mother held, and which is not produced, with the defendant was the same as to entries therein as appear in the ledger sheet of the defendant. The probative effect of all that is before us supports the finding and judgment of the trial court that the account in question was a running stock account. There are, of course, disconcerting situations in this record which we recognize, but upon the whole, they do not remove the general effect of the evidence that her claim is a claim which was a Running Stock Account. The receipts, particularly the first, signed by the plaintiff's mother clearly sets

out in bold type that she was withdrawing from her "Running Stock Account". Many of the entries which are "ear marked" are consistent with the theory that she held a Running Stock Account, although there are instances to the contrary.

We are cited to **Smith v Kroeger 28 Abs 45**, and to **Junikl v The Miami Savings & Loan Company, 39 Abs 311**, both of which opinions emanated from this court. We are in accord with that which was said in both of these opinions. In the former, we recited that the relationship of stockholder to the building association was contractual, and that such contract may be express or implied. Here, both the plaintiff and the defendant proceed upon the hypothesis of a contract between plaintiff's mother and the defendant. The variance arises as to the contract established by the evidence.

The facts in the Junikl case bear little or no resemblance to those developed here. In that case we need only recite the second head note to differentiate the factual situation developed in the respective cases.

"In an action to establish deposit in a building and loan association a special deposit, plaintiff is entitled to the relief prayed where **his testimony established unmistakably that he at all times placed his funds with the defendant as a special depositor,** that neither he nor the loan company should have had any doubt about his status, and **there is no refutation of it except that which may be inferred from the records of the defendant.**" (Emphasis ours)

In the cited case, the records of the defendant by one aspect of the testimony developed, and in the main, were not in derogation of the express testimony of the plaintiff but corrobative thereof. Here, there is practically nothing but the records of the defendant company upon which to make a determination of the status of the claim upon which plaintiff predicates her right of action.

Upon the factual development we cannot find that the trial court erred in entering judgment for the defendant. It will be affirmed.

BARNES, P. J. and GEIGER, J., concur.